Andrew KENNY, et al., Appellants,

v.

Robert E. HAMPTON, Chairman, United States Civil Service Commission, et al.

No. 71–1290.

United States Court of Appeals, District of Columbia Circuit.

March 15, 1973.

Rehearing Denied May 21, 1973.

William G. Polking, Carroll, Iowa, was on the brief for appellants.

Daniel Reiss, Jr. and L. Chris Lampros, Washington, D. C., were on the supplemental memorandum for appellants.

Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry, Ellen Lee Park, and James A. Adams, Asst. U. S. Attys., were on the brief for appellees.

Before McGOWAN, LEVENTHAL and WILKEY, Circuit Judges.

PER CURIAM:

Appellants are three former federal employees who, prior to October 1, 1956, voluntarily left the civil service before reaching the age of sixty-two.[1] Each having spent more than five but less than twenty years in creditable service, the Civil Service Retirement Act of 1930 (Act) then entitled them to elect to receive either (1) a present lump sum settlement or (2) a deferred annuity beginning at age sixty-two. Each elected to receive the deferred annuity. In 1958 and 1965 Congress enacted cost-of-living annuity increases, amending the Act to adjust certain civil service annuities based on service terminated prior to October 1, 1956. The Civil Service Commission refused in part to pay these increases to appellants. Challenging these denials, appellants sued in the District Court for declaratory and injunctive relief. We affirm the trial court's dismissal of the complaint after it considered the parties' cross-motions for summary judgment and granted that of the Government.[2]

The 1958 increase provided in relevant part:

1. That

(a) the annuity of each *retired employee* . . . who, *on August 1, 1958, is receiving or entitled to receive* an annuity . . . based on service which terminated prior to October 1, 1956, shall be increased by 10 per centum . . . .

---

1. Appellant Kenny attained that age in November, 1961; appellant Fox in May, 1959; and appellant Dolan in January, 1967.

2. Our decision on the merits of this appeal pretermits the question whether the action was properly brought in the District Court. And our affirmance makes it unnecessary to decide whether some of the appellants failed to exhaust their administrative remedies; or whether one or more of the appellants may be properly certified as a representative of the class of annuitants similarly situated.

(b) The annuity otherwise payable . . . to (1) each *survivor* who *on August 1, 1958, is receiving or entitled to receive* an annuity based on service which terminated prior to October 1, 1956 . . . shall be increased by 10 per centum.

. . . .

3. (a) An increase in annuity provided by subsection (a), or clause (1) of subsection (b), of the first section of this Act shall take effect on August 1, 1958.

Act of Jun. 25, 1958, Pub.L. No. 85–465, 72 Stat. 218 (emphasis added).

■ Appellants as retired employees seek to bring themselves within the terms of Section 1(a) of the increase by alternative arguments. Specifically, they assert either (1) that out of the class of all retired employees whose service terminated prior to October 1, 1956, to deny the annuity increase only to those whose deferred annuities commence after August 1, 1958 amounts to an unconstitutional discrimination, or (2) that the interpretation of "entitled to receive an annuity" as rendered by the Court of Claims with regard to Section 1(b)(1) of the increase, Hurtt v. United States, 309 F.2d 404, 159 Ct.Cl. 126 (1962), be extended to Section 1(a). We think that, contrary to appellants' contentions, there is a rational basis for distinguishing between both those whose annuities commence before and after August 1, 1958, and annuitants covered by Sections 1(a) and 1(b)(1).

Appellants assert that, although each of their deferred annuities were to begin subsequent to August 1, 1958—after which date they became sixty-two, see note 1 *supra*—they were still "entitled" to those annuities on the specified date,

and thus were qualified for the Section 1(a) increase. The Court of Claims ruled on this same question in Schellfeffer v. United States, 343 F.2d 936, 170 Ct.Cl. 178 (1965), finding *inter alia* that the legislative history of the increase reflected a Congressional intent that the coverage of Section 1(a) "be confined to annuitants already on the rolls (i. e., actually receiving an annuity or fully entitled to an immediate annuity) on August 1, 1958. . . ." 343 F.2d at 940.[3]

■■ The basis for this coverage limitation was to deter federal employees from separating from the service voluntarily before age sixty-two by insuring that those who did so separate would not benefit by annuity increases put into effect before they reached that age. We think the objective was a legitimate one, and the limitation reasonably calculated to achieve it. It was thought that those who voluntarily separate before age sixty-two would probably do so to realize more lucrative employment, which might also entitle them to Social Security benefits in addition to their Civil Service annuity. That some who so separated might not be as comfortably situated as was contemplated does not affect the validity of the view that the ordinary circumstances of such a separation would appear to mitigate the economic consequences of the coverage limitation. The Commission's interpretation of the statute's compass, supported by the Court of Claims and the Congress,

cannot necessarily be charged with unreasonableness because in particular applications the . . . general interpretations may grind with a rough edge.

. . . effective [date of the annuity increase] . . . not include any person whose *annuity commencing date* occurs after the effective date of the annuity increase. . . .

Act of May 1, 1965, Pub.L. No. 89–17, 79 Stat. 109 (emphasis added).

---

3. Shortly after the decision in *Schellfeffer* Congress enacted a clarification of the terms at issue which confirmed the court's interpretation of them:

[F]or the purposes of section 1(a) . . . the words "entitled to receive an annuity" shall, from and after the

Gulf Oil Corp. v. Hickel, 140 U.S.App. D.C. 368, 435 F.2d 440, 447 (1970) (Leventhal, J.).[4]

Appellants' alternative claim fares no better. Section 1(a) by its terms applies to "retired employees" while Section 1(b)(1) applies to "survivors." It was in the latter context that *Hurtt, supra,* decided that a widow of a federal employee was "entitled to receive an annuity on August 1, 1958" even though her annuity would not commence until after that date. Appellants are differently situated in that Mrs. Hurtt's right to annuity payments was based on an involuntary termination of federal service (her husband's death). The deterrence rationale for the coverage limitation of Section 1(a) as to those who may consider voluntary separation is thus inapplicable to Section 1(b)(1) survivors such as Mrs. Hurtt. Appellants cannot therefore bring themselves within the rationally more generous embrace of the latter increase provision.

█ Appellants' objection to the Commission's refusal to grant them the maximum benefit under the 1965 increase is not clear. That increase provides in relevant part:

(a) Effective December 1, 1965, each annuity . . . having a *commencing date before December 2, 1965* is increased by—

(1) The percent rise in the price index . . . plus

(2) 6½ percent if the *commencing date . . . occurred before October 2 1956.* . . .

5 U.S.C. § 8340 (1970) (emphasis added). The use of the phrase "commencing date," *see* note 2 *supra,* eliminates the potential ambiguity of the "entitled to receive" language found in the 1958 increase. Appellant Dolan could not benefit from the 1965 increase at all because her annuity commenced after December 1, 1965. Appellants Kenny and Fox could not realize the 6½ percent increase because their annuities began after October 2, 1956, although they do benefit from the price index increase. We see no infirmity in the distinctions clearly drawn by the 1965 increase.

The order of the District Court is Affirmed.

---

4. Neither does the Commission's denial of increased payments based on this interpretation constitute rule-making requiring, as appellants claim, concomitant rule-making procedures. 5 U.S.C. § 553(b)(A) (1970). And, with respect to appellants' attack on the District Court's denial of their application for a three-judge court under 28 U.S.C. § 2282 (1970), our anal-

ysis supports the view of the trial judge that their challenge to the statutory scheme failed to raise the substantial constitutional issue deemed necessary to support such applications. Green v. Board of Elections, 380 F.2d 445, 448 (2d Cir. 1967) (Friendly, J.), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968).