ELEANOR SLEETH, Plaintiff-Appellee, *v.* THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

Third District   Nos. 3—84—0019 through 3—84—0023 cons.

Opinion filed July 24, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Susan Dawson-Tibbets, of Prairie State Legal Services, Inc., of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This appeal is a consolidation of the grant of five petitions for leave to appeal pursuant to Supreme Court Rule 306 (87 Ill. 2d R. 306.) Leave to appeal was sought from orders entered by the circuit court of Peoria County in each of the five cases. By those circuit court orders, the lower court reversed final administrative decisions of the Illinois Department of Public Aid (IDPA) which denied applications for and/or terminated assistance to each of the named plaintiffs. The circuit court orders remanded the administrative review actions to the IDPA for new hearings in accordance with the circuit court's determination that the IDPA's present hearing process which is conducted via telephone conference fails to comport with the due process clauses of the United States Constitution and Illinois Constitution, and that the IDPA's administrative process fails to comply with various State and Federal statutes and/or regulations.

Four of the plaintiffs, Eleanor Sleeth, Cora Anderson, Judith Wilson and Lonnie Cannon, were receiving financial and medical assistance on a presumptively eligible basis from the IDPA under the Aid to the Aged, Blind and Disabled (AABD) program. This assistance was terminated when the Peoria County IDPA office learned that each of these plaintiffs had been found to be "not disabled" by the Social Security Administration (SSA) pursuant to the plaintiffs' applications to that agency for supplemental security income (SSI). The four plaintiffs were notified that their AABD assistance was going to be terminated.

As a result of the appellate court decision in *Watterson v. Miller* (1983), 117 Ill. App. 3d 1054, 454 N.E.2d 373, the IDPA revised its

procedures for disability hearings on February 4, 1983. After that date the IDPA required all persons who had been terminated from their presumptively eligible AABD benefits due to a finding of "not disabled" from SSA to submit proof of disability to the local county office within 14 days of the filing of a notice of appeal protesting that termination. All four of these plaintiffs filed a notice of appeal with the Peoria County office of the IDPA. None of these plaintiffs submitted their medical records within 14 days of filing their notices of appeal.

The appeal hearings in these four cases were held by conference telephone with the plaintiffs, their representatives and witnesses, and county office personnel at the Peoria County IDPA office, while the hearing officers were at the Chicago IDPA office. The hearing officers were not able to observe any of the persons who testified.

Each of the four plaintiffs was permitted to testify at the hearing as to their medical condition. None of the plaintiffs were permitted to submit medical records to substantiate the oral testimony regarding this documentary evidence based upon the failure of each of the plaintiffs to submit the documents within the 14-day rule promulgated by the IDPA in the wake of the *Watterson v. Miller* case.

The final administrative decisions for each of these four plaintiffs affirmed the termination of their AABD benefits, based upon the hearing officers' conclusions that each plaintiff failed to prove that he or she was permanently and totally disabled.

The fifth plaintiff, Brenda Jackson, received financial and medical assistance from the IDPA under its Aid to Families of Dependent Children (AFDC) program. She was notified that she was going to be sanctioned for the months of May, June, and July, 1983, for her failure to cooperate with the WIN Demonstration Program (WDP). The WDP is designed to help AFDC recipients to locate and obtain employment. The sanction described in the notice consisted of a reduction in the plaintiff's grant for the months of May, June, and July from $348 per month to $206 per month.

All recipients of AFDC benefits must be registered with the WDP as a condition of eligibility unless they fit into a specified exempt category. One such exemption is for medical reasons. Once registered with the WDP, an individual who fails or refuses to participate without good cause is subject to be sanctioned for three months.

The plaintiff Jackson appealed the IDPA's decision to impose sanctions, and 24 days later she was given a hearing by telephone conference with the IDPA. The plaintiff, her representatives, and local county office personnel were in Peoria, and the hearing officer was in

Chicago. The plaintiff presented testimony that disproved the allegation of her failure of cooperation, and this testimony was challenged with the testimony of local county office personnel.

The hearing officer acknowledged that this case involved a dispute over the facts. Nevertheless, the final administrative decision affirmed the IDPA sanctions, as the hearing officer resolved all disputed facts and issues in the IDPA's favor.

Each of the five plaintiffs filed a complaint for administrative review in the circuit court of Peoria County. Each plaintiff charged that the IDPA's conduct of its hearings by telephone conference violated due process and various State and Federal statutes and regulations. In addition, the four allegedly disabled plaintiffs complained of the 14-day rule. They asserted that the IDPA's requirement that proof of disability be submitted within 14 days of the filing of the appeal is arbitrary and unreasonable and contravenes the equal protection clauses of the Federal and State constitutions. By orders entered in each case, the circuit court reversed the IDPA's final administrative decisions and remanded the cases to the IDPA for new hearings. The circuit court found that the hearings procedure by telephone conference was both statutorily and constitutionally deficient. Regarding the four allegedly disabled plaintiffs, the circuit court concluded that the 14-day submission of proof of disability requirement deprived those plaintiffs of constitutionally guaranteed due process and equal protection, while also violating State statutes. The Peoria County court gave each plaintiff 45 days prior to the commencement of the new hearing to submit medical records and to have that time extended upon proof of inability to procure the records due to the fault of third parties.

The IDPA appeals the decision of the circuit court and prays that the final administrative decision as previously rendered be affirmed.

At the outset, we note that a reviewing court is not required to consider contentions which are not essential to the determination of the case before it. (*Illinois Racing Board v. Hammond* (1977), 56 Ill. App. 3d 609, 371 N.E.2d 1189; *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990.) Thus, if the procedures complained of by the plaintiffs are invalid because they contravene State statute, it is unnecessary to consider whether those same procedures might be constitutional if they were allowed by statute. Such issues, those that explore what might be constitutional, are abstract questions which are not properly reviewable. Accordingly, we must first determine whether the procedures utilized by the IDPA are consistent with the Illinois Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, par. 1—1 *et seq.*), the statutory authority under which the IDPA con-

ducts its activities.

The Illinois Public Aid Code sets forth procedures for appeals by applicants or recipients of assistance under both the AABD and AFDC programs:

> "Upon receipt of an appeal the Illinois Department, Public Aid Committee, or Commissioner of Appeals, as the case may be, shall review the case. The appellant shall be entitled to appear *in person* and to be represented by counsel. He shall be afforded an opportunity to present all relevant matter in support of his claim for aid, or his objection to (a) termination of aid, or (b) the amount of aid, or (c) a determination to make a protective payment." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 23, par. 11—8.1.

> "The appeal shall be heard *in the county* where the appellant resides. However, if the appellant is outside the state, the Illinois Department, Public Aid Committee, or Commissioner of Appeals, as the case may be, may take depositions from him and his witnesses or permit the appellant to present all relevant matter in support of his claim through witnesses acting in his behalf, or both by deposition or by testimony of witnesses, depending upon the circumstances in each case." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 23, par. 11—8.2.

The parties to this appeal disagree about the meaning of the statutory mandate that the appellant be entitled to appear "in person" at the review of his case and that such review be heard "in the county" where the appellant resides.

The IDPA asserts that the hearing was conducted in the Peoria County local office, the county in which each appellant resided, and at the time each appellant was personally present. The presence of the hearing officer in Chicago, connected to the Peoria County office by conference telephone, does not, the IDPA asserts, contravene the prescribed statutory procedures. In contrast the plaintiffs argue that the statute provides for their rights to be personally present at the review of their appeal, and in each case the review took place in Chicago, not in Peoria County.

The issues raised are ones of first impression. It appears that no Illinois reviewing court has heretofore faced the question of what constitutes an "in person" review or of what determines the place of hearing. With the advent of modern telecommunications technology, these are questions which may be raised more frequently in the future than they have been in the past.

Webster's New Collegiate dictionary defines "in person" as fol-

lows:

"Of or relating to the actual presence of the subject." (Webster's New Collegiate Dictionary (1981).)

This definition offers little assistance in resolving the instant dispute, as it begs the question, actually present where? It seems obvious, and indeed circular, to conclude that this means present at the hearing, which begs the question, where is the hearing?

The essence of a hearing is the opportunity to be heard by the listener. One can be heard by written affidavit, by closed circuit television, by video tape recording, by telephone or by actual appearance. Each method offers an opportunity to be heard, but only with the last mentioned method is the *situs* of the hearing—is the place where the listener hears—in the actual presence of the speaker.

■ In the instant case, the listener was not one of the local office personnel in Peoria, but the officer or officers located in Chicago. The speakers were the plaintiffs, and under the procedures followed by the IDPA, the plaintiffs were not present at the *situs* of the hearing. It follows then that the hearing was not conducted in the county of the plaintiffs' residence. We must conclude that the procedures utilized by the IDPA for telephone conference hearings failed to meet statutory requirements of the Illinois Public Aid Code.

The IDPA adopted the 14-day rule following the decision in *Watterson v. Miller* (1983), 117 Ill. App. 3d 1054, 454 N.E.2d 373, with its IDPA manual release No. 83.5. The circuit court concluded that this rule was invalid as it was adopted by the IDPA without compliance with the provisions of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1983, ch. 127, par. 1001 *et seq.*). On appeal, the IDPA concedes that the provisions of the Illinois Administrative Procedure Act were not followed when the agency adopted the 14-day rule. However, it asserts that the statement contained in manual release No. 83.5 did not constitute a rule within the statutory definition. (Ill. Rev. Stat. 1983, ch. 127, par. 1003.09.) In further support of its position, the IDPA cites the recent decision of *Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 442 N.E.2d 846. In that decision the supreme court explained the statutory definition of rule, and the exceptions to that definition dealing with "intra agency Memoranda." The statement there in question dealt with an explanation to the auditors of the Department of Revenue concerning the mechanics involved in computing the use tax. The court concluded that since the statement was an explanation of existing policy to department employees, it was not a rule within the definition of that term as used in the Illinois Administrative Procedure Act.

■ We believe the 14-day requirement, as stated in manual release No. 83.5, is a much different type of rule than the subject of the litigation in the *Mobil Oil* case. The rule in question affects private rights and procedures available to persons outside the IDPA. This type of statement by an agency is specifically included within the definition of rule under the Illinois Administrative Procedures Act. As such, we believe it is a rule which can only be adopted in accordance with the procedures set forth in that act. Where rules are not adopted consistent with the statutory procedures, the rules are not valid. (Ill. Rev. Stat. 1983, ch. 127, par. 1005(b).) It follows then that the hearing officer in the cases before us incorrectly relied on the validity of the 14-day rule denying admission into evidence of the medical records proffered by the plaintiffs.

For the reasons above stated, we believe the hearing procedures followed by the IDPA violated State law. Whether those procedures might be constitutional should the legislature choose to amend the law are abstract questions which we cannot review. The judgment of the circuit court requiring these cases to be remanded to the IDPA for a new hearing is clearly within that court's authority. (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(a)(6).) Since the circuit court correctly applied the law in reviewing the administrative actions and ordering a remedy, we affirm that decision.

The decision reached and the reasoning in support thereof is applicable not only to the instant case but also to those consolidated with it, namely, cases numbered 3—84—0020, 3—84—0021, 3—84—0022 and 3—84—0023.

Affirmed.

HEIPLE and STOUDER, JJ., concur.